# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| | : |
| JACQUELINE L. STREICH, | : |
| | : |
| plaintiff, | : |
| | : |
| v. | :   CASE NO. 3:18-cv-01977(RAR) |
| | : |
| NANCY A. BERRYHILL,[1] COMMISSIONER OF SOCIAL SECURITY, | : |
| | : |
| | : |
| defendant. | : |

## <u>**RULING ON PENDING MOTIONS**</u>

Jaqueline L. Streich ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated October 1, 2018. Plaintiff timely appealed to this Court. Currently pending are plaintiff's motion for an order reversing and remanding her case for a hearing (Dkt. #10-2) and defendant's motion to affirm the decision of the Commissioner. (Dkt. #11-1.)

---

[1] Andrew Saul is the new Commissioner of Social Security and has been added as a party automatically.

For the reasons that follow, the plaintiff's motion to
reverse, or in the alternative, remand is DENIED and the
Commissioner's motion to affirm is GRANTED.

**STANDARD**

"A district court reviewing a final . . . decision [of the
Commissioner of Social Security] pursuant to section 205(g) of
the Social Security Act, 42 U.S.C § 405(g), is performing an
appellate function." Zambrana v. Califano, 651 F.2d 842, 844
(2d Cir. 1981). "The findings of the Commissioner of Social
Security as to any fact, if supported by substantial evidence,
[are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the
court may not make a *de novo* determination of whether a
plaintiff is disabled in reviewing a denial of disability
benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906
F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is
to ascertain whether the Commissioner applied the correct legal
principles in reaching her conclusion, and whether the decision
is supported by substantial evidence. Johnson v. Bowen, 817
F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside
the decision of the Commissioner if it is supported by
substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d
Cir. 1982). Further, if the Commissioner's decision is
supported by substantial evidence, that decision will be

sustained, even where there may also be substantial evidence to support the plaintiff's contrary position.  Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence must be "more than a scintilla or touch of proof here and there in the record."  Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability.  42 U.S.C. § 423(a)(1).  "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ."  42 U.S.C. § 423(d)(1).  In order to determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[2]

_____

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled,

In order to be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  Id.[3]

## PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits under Title II on November 10, 2015.  (R. 183.)[4]  Plaintiff alleged a disability onset date of July 26, 2012.  (R. 183.)  At the time of application, plaintiff alleged that she suffered

_____

without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.  The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.  20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work."  Id.

[4] The Court cites pages within the administrative record as "R. ___."

from chronic back pain, chronic hip pain, anxiety, depression, and the inability to sit or stand for long periods of time. (R. 110.) The initial application was denied on January 27, 2016, and again on May 3, 2016, upon reconsideration. (R. 110–113, 116–118.) Plaintiff then filed for an administrative hearing which was held by ALJ Louis Bonsangue (hereinafter the "ALJ") on September 22, 2017. (R. 39–80.) The ALJ issued an unfavorable decision on October 27, 2017. (R. 10–21.) On December 19, 2017, plaintiff sought a review by the Appeals Council, which was denied on October 1, 2018. (R. 1–6.) Plaintiff then filed this action seeking judicial review. (Dkt. #10-2.)

## DISCUSSION

Plaintiff asserts that she is entitled to remand because the ALJ was not properly appointed; the ALJ's determinations at step two and five are not supported by substantial evidence; the ALJ violated the treating physician rule; and the ALJ failed to develop the record. (Pl. Br. 1, 6, 9, 23.) Based on the following, the Court finds that the plaintiff's appointment challenge is untimely, the ALJ's opinion is supported by substantial evidence, and the ALJ did not fail to develop the record or violate the treating physician rule. The Court therefore affirms.

## I.  Plaintiff's Challenge to The ALJ's Appointment is Untimely

Plaintiff asserts that because the ALJ was not properly appointed when he decided the case, plaintiff is entitled to a new hearing.  The Court disagrees.

The Supreme Court recently provided that the Securities and Exchange Commission ALJs are "'[o]fficers of the United States,' subject to the Appointment Clause." Lucia v. S.E.C., 138 S.Ct. 2044, 2055 (2018).  United States District Courts have since applied Lucia to Social Security Administration ALJs and have required their appointment to conform with the Appointments Clause of the United States Constitution.  See Williams v. Berryhill, No. 17-CV-1660 (JMA), 2019 WL 1271647, at *6 (E.D.N.Y. Mar. 19, 2019); Bonilla-Bukhari v. Berryhill, 357 F.Supp.3d 341, 349–350 (S.D.N.Y. 2019).

"'[O]ne who makes a *timely* challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." Lucia, 138 S.Ct. at 2055 (quoting Ryder v. United States, 515 U.S. 177, 182–183 (1995))(emphasis added).  Accordingly, "Social Security claimants are entitled to a Lucia rehearing, only if they raised their Appointments Clause arguments during their agency hearing or appeal." Johnson v. Berryhill, No. 3:17-cv-1651(VAB), 2019 WL 1430242, at *14 (D.

Conn. Mar. 29, 2019); see also Williams, 2019 WL 1271647, at *6; Bonilla-Bukhari, 357 F.Supp.3d at 349–350.

The ALJ presided over plaintiff's hearing on September 22, 2017 and issued a decision on October 27, 2017. (R. 40–80; 7–25.) The ALJ was not appointed until eight months after deciding plaintiff's claim. (Pl. Br. 7.) Plaintiff asserts that she is entitled to a new hearing because the ALJ was not properly appointed and therefore lacked the authority to hear and decide her claim. (Pl. Br. 6.) Plaintiff failed to raise this issue during the administrative proceeding, thereby rendering her challenge untimely. See Johnson, 2019 WL 1430242, at *14; Bonilla-Bukhari, 357 F.Supp.3d at 349; Allen v. Berryhill, No. 17-CV-03414-HSG, 2019 WL 1438845, at *13 (N.D. Cal. Mar. 31, 2019); Lee v. Berryhill, No. 2:18CV214, 2019 WL 1299366, at *1 (E.D. Va. Mar. 21, 2019); Catherine V. v. Berryhill, No. CV 17-3257 (DWF/LIB), 2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019). Therefore, her argument is rejected.

## II. The ALJ's RFC and Step Five Determinations are Supported by Substantial evidence

*a. The ALJ's evaluation of plaintiff's complaints of pain at step two were supported by substantial evidence.*

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. Plaintiff asserts that the ALJ improperly discounted her assertions of pain. The Court disagrees.

When an individual's impairment does not meet or equal a
listed impairment, the ALJ will "make a finding [of the
individual's] residual functional capacity based on all the
relevant medical and other evidence in [the] case record."  20
C.F.R. § 404.1520(e).  An individual's RFC is the most an
individual can still do despite his or her limitations.  20
C.F.R. § 404.1545(a)(1).  Plaintiff has the burden of
establishing a diminished RFC.  See Butts v. Barnhart, 388 F.3d
377, 383 (2d Cir. 2004).

"The regulations provide a two-step process for evaluating
a claimant's assertions of pain and other limitations.  At the
first step, the ALJ must decide whether the claimant suffers
from a medically determinable impairment that could reasonably
be expected to produce the symptoms alleged."  Genier v. Astrue,
606 F.3d 46, 49 (2d Cir. 2011)(citing 20 C.F.R. § 404.1529(b)).
"If the claimant does suffer from such an impairment, at the
second step, the ALJ must consider 'the extent to which [the
claimant's] symptoms can reasonably be accepted as consistent
with the objective medical evidence and other evidence' of
record."  Genier, 606 F.3d at 49 (alterations in original)
(quoting 20 C.F.R. § 404.1529(b)).

"In determining whether [an individual is] disabled, [the
ALJ will] consider all [of an individual's] symptoms, including
pain, and the extent to which [his or her] symptoms can

reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c). While statements of pain are insufficient, an ALJ may not reject statements of intensity and persistence of pain or other symptoms affecting an individual's ability to work because of a lack of substantiating medical evidence. Id. at § 404.1529(c)(2).

First, the ALJ properly determined that plaintiff suffered from four medically determinable impairments which could have been expected to produce her symptom: degenerative disc disease of the lumbar spine, status post lumbar decompression, fusion surgery with sacroiliac joint pain, and obesity. (R. 12, 15.) The ALJ further found that plaintiff's impairments more than minimally interfered with her ability to perform basic work activities and therefore were severe. (R. 12.)

At step two, the ALJ determined that plaintiff's declarations of pain were inconsistent with the objective medical evidence and other evidence. Plaintiff asserts that the support the ALJ provided for his determination was insufficient to rise to the level of substantial evidence. (Pl. Br. 23.)

"As a fact-finder, the ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence." Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d

1035, 1042 (2d Cir. 1997). "'Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence . . . Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.'" Lillis v. Colvin, No. 3:16-cv-269(WIG), 2017 WL 784949, at *5 (D. Conn. Mar. 1, 2017) (quoting Hanson v. Comm'r of Soc. Sec., No. 315-CV-0150GTS(WBC), 2016 WL 3960486, at *12 (N.D.N.Y. June 29, 2016), report and recommendation *adopted sub nom.* Hanson v. Colvin, No. 315-CV-150GTS(WBC), 2016 WL 3951150 (N.D.N.Y. July 20, 2016)).

The ALJ's determination was supported by substantial evidence. Plaintiff asserts that she is unable to participate in any substantially gainful activity due to pain. (R. 53.) Plaintiff stated that her pain averaged a nine or ten out of ten and that she is unable to sit or stand for greater than ten minutes or complete simple household chores such as cooking and cleaning. (R. 48, 64, 67.) Dr. Waitze opined that plaintiff could frequently lift up to ten pounds, but never more than eleven to twenty pounds; could sit for up to thirty minutes; stand or walk for up to fifteen minutes; occasionally reach with her left and right arms; never push, pull, operate foot pedals, bend, stoop, climb ladders or scaffolds, kneel, crouch, or crawl. (R. 463–66.)

However, as the ALJ noted, Doctors Fong-Brenton and Rittner opined that plaintiff could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; sit, stand, or walk for a total of six hours in an eight hour work day; had unlimited ability to push or pull by operation of her hands or feet; could occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl; and could never climb ladders, ropes, or scaffolds.  (R. 91-92, 104-05.)

The ALJ noted that, in 2012, plaintiff reported that she hurt her back and was experiencing pain and that an MRI of her lumbar spine revealed a minimal diffuse disc bulge at L4-L5. (R. 270.)  Upon examination, plaintiff demonstrated pain at the end range of extension, positive SI joint compression, full strength, intact sensation, intact reflexes, negative straight leg raises, and non-antalgic gait.  (R. 271.)  Plaintiff was treated with Vicodin and bilateral steroid injections and achieved 60 to 80 percent relief.  (R. 277, 278.)  While plaintiff reported treatment to be unsuccessful at times, (R. 276, 282), plaintiff also reported continued or stable improvement in her pain during 2012.  (R. 279, 280, 281.)

In 2013, plaintiff continued injections and physical therapy.  (R. 284.)  Plaintiff continued to report an improvement in her symptoms with treatment.  (R. 286.)  In 2014, plaintiff reported that her pain was persisting without

improvement.  (R. 307, 342–347.)  After plaintiff's lumbar
fusion, however, she was reported to be doing very well and her
lumbar construct showed great integrity.  (R. 348, 349, 350.)
Plaintiff even began walking and exercising at home.  (R. 350.)
In 2015, plaintiff was continually assessed to have no
musculoskeletal weakness, pain, or joint stiffness.  (R. 330,
334, 338.)  While plaintiff did report pain in her midback,
examination demonstrated no neurological changes and negative
straight leg raises bilaterally. (R. 352, 354, 356, 358.)

    In 2016, plaintiff was reevaluated for back pain.  Although
plaintiff experienced pain upon flexion and rotation, Dr.
Darling noted that plaintiff had no neurological changes and
demonstrated no acute distress when at rest.  (R. 458.)  Similar
reports were also documented in 2017.  (R. 482, 484.)

    Plaintiff reported that she prepares small meals for
herself and goes outside daily.  (R. 224–25.)  Plaintiff also
stated that she can drive a car, although Dr. Waitze stated that
she could never use foot pedals.  (R. 225.)  Plaintiff can also
conduct minor grocery shopping in stores and online.  (R. 226.)

    While plaintiff asserts that the ALJ's findings at step two
are unsupported, plaintiff does not highlight any evidence in
the record demonstrating that her pain was severe.  Plaintiff
does not refute or object to any of the evidence that the ALJ
cited in support of his determination, but merely cites to

caselaw mostly outside of the Second Circuit with almost no analysis of the present facts. (Pl. Br. 23-24.) "'Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence . . . Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.'" Lillis v. Colvin, No. 3:16-cv-269(WIG), 2017 WL 784949, at *5 (D. Conn. Mar. 1, 2017) (quoting Hanson v. Comm'r of Soc. Sec., No. 315-CV-0150GTS(WBC), 2016 WL 3960486, at *12 (N.D.N.Y. June 29, 2016), report and recommendation *adopted sub nom.* Hanson v. Colvin, No. 315-CV-150GTS(WBC), 2016 WL 3951150 (N.D.N.Y. July 20, 2016)). Plaintiff has failed to do so.

Plaintiff has not shown that the relevant evidence precludes a reasonable mind from finding that her pain does not prevent her from participating in any substantially gainful activity. Plaintiff has thus failed to demonstrate that the ALJ's determination is unsupported by substantial evidence. Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

> *b. The ALJ's determination that a substantial numbers of jobs were available in the national economy which plaintiff could perform was supported by substantial evidence.*

Plaintiff asserts that the ALJ's step five determination is not supported by substantial evidence because the vocational expert, Richard Hall, did not provide adequate support for his

evaluation of the number of jobs available in the national economy and the availability of a sit/stand option. (Pl. Br. 1–6.) Plaintiff asserts that Mr. Hall's reference to the Dictionary of Occupational Titles (hereinafter "DOT") was insufficient because the DOT is outdated and therefore obsolete. (Pl. Br. 1.) The Court disagrees.

At Step Five, the ALJ must determine whether a significant number of jobs exist in the national economy which the plaintiff can perform. See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion,' . . . and accurately reflect the limitations and capabilities of the claimant involved." Id. (internal citations omitted) (alterations in original) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983)) (citing Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981)).

A vocational expert's failure to provide scientific data supporting his or her conclusion as to the number of jobs available in the national economy may still be supported by

substantial evidence.  Biestek v. Berryhill, 139 S. Ct. 1148, 1157 (2019).  "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case.  It takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record."  Id.  While the refusal to present scientific data may or may not affect the credibility of the expert's testimony, the analysis "defers to the presiding ALJ, who has seen the hearing up close."  Id.

The vocational expert's credentials, history of testimony, her ability to answer the ALJ and attorney's questions, and the alleged basis for her testimony are all relevant in providing substantial evidence for her opinion.  See id. at 1155.

The Second Circuit Court of Appeals has held that "a vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally."  McIntyre, 758 F.3d at 152.  "[T]he ALJ [may] reasonably credit[] [a vocational expert's] testimony, which was given on the basis of the expert's professional experience and clinical judgment, and which was not undermined by any evidence in the record."  Id.

At the September 22, 2017 hearing, the ALJ posed a hypothetical to the vocational expert, Richard Hall, identical to his RFC determination.  (R. 75-76.)  Mr. Hall testified that a hypothetical person with such limitations would be able to

work as a quotation clerk, national number of 110,000, document preparer, national number of 120,000, and addresser, national number of 115,000. (R. 75.) Mr. Hall also testified that these jobs would allow for a sit/stand option. (R. 76.) Mr. Hall confirmed his testimony was consistent with the DOT. (R. 76.)

First, plaintiff asserts that Mr. Hall's testimony is not based on substantial evidence because Mr. Hall failed to cite the evidence supporting his determination regarding the number of the named jobs available in the national economy. Plaintiff is incorrect.

In Crespo, the vocational expert identified available jobs based on a hypothetical person's limitations and the number of these available jobs in the national economy. Crespo v. Comm'r of Soc. Sec., No. 3:18-CV-00435 (JAM), 2019 WL 4686763, at *8 (D. Conn. Sept. 25, 2019). The ALJ relied on the vocational expert's testimony despite his failure to identify the source of the number of jobs. Id. The plaintiff's counsel examined the vocational expert and did not challenge the qualifications of the expert or ask about the number of jobs available. Id. The court determined that "the vocational expert's failure to identify the sources of her job-numbers data does not dispel the existence of substantial evidence for the ALJ's conclusion that Crespo could perform a substantial number of jobs that existed in the national economy." Id. at *9.

The facts presented here are similar to those in Crespo. The ALJ relied on Mr. Hall's testimony despite his failure to provide a source for his testimony. (R. 20.) Plaintiff's counsel did not object to Mr. Hall's qualifications or to the number of jobs while at the hearing. See (R. 71, 77–78.) As in Crespo, Mr. Hall's failure to provide a source for the number of jobs in the economy does not "dispel the existence of substantial evidence." Crespo, 2019 WL 4686763, at *9.

Next, plaintiff takes issue with Mr. Hall's summary of the DOT's description of telephone clerk. Mr. Hall testified that,

> [b]asically, these individuals use the telephone to call various businesses and companies to, as the title suggests, gain quotes for a project for a business to use in doing an estimate and then they compile that information for the employer.

(R. 76.) The DOT description states,

> [a]nswers telephone calls from customers requesting current stock quotations and provides information posted on electronic quote board. Relays calls to REGISTERED REPRESENTATIVE (financial) 250.257-018 as requested by customer. May call customers to inform them of stock quotations.

DOT, 237.367-046 Telephone Quotation Clerk.

Plaintiff asserts that the accurate DOT description demonstrates that the job of telephone quotation clerk is obsolete. (Pl. Br. 4.) Plaintiff fails to provide any evidence that the position of telephone quotation clerk does not exist in significant numbers in the national economy. Plaintiff merely

speculates that this job is now nonexistent due to the use of computers. Contrary to plaintiff's assertion, the ALJ is specifically directed to take administrative notice of the reliable job information from the DOT. 20 C.F.R. § 416.966(d). Further, as already stated, Mr. Hall's testimony as to the number of jobs in the national economy, in addition to his credentials and experience, provide substantial evidence to support the ALJ's finding that a significant number of telephone quotation clerk jobs exist in the national economy. Therefore, the Court rejects plaintiff's unsupported assertion.[5]

Finally, plaintiff challenges Mr. Hall's assessment that plaintiff would be capable of performing the occupation of "addresser" with a sit/stand option. Plaintiff asserts that the sit/stand option would impede her ability to remain on task with the pace of production. (Pl. Br. 5.) As the court determined in McIntyre, the ALJ's determination as to the availability of a sit/stand option is supported by substantial evidence where the ALJ relied on the testimony of the vocational expert in making such a determination. McIntyre v. Colvin, No. 3:12-CV-0318 GTS, 2013 WL 2237828, at *6 (N.D.N.Y. May 21, 2013), aff'd, 758 F.3d 146 (2d Cir. 2014).

---

[5] For similar reasons, the Court rejects plaintiff's similar argument that the position of "addresser" does not exist in significant numbers in the national economy. (Pl. Br. 5.)

Like McIntyre, the ALJ based his determination that none of the listed occupations would be removed by a sit/stand option on the vocational expert's testimony. Therefore, his determination is supported by substantial evidence.

Plaintiff has not shown that the relevant evidence precludes a reasonable mind from finding that plaintiff could perform a substantial number of jobs that exist in the national economy. Plaintiff has thus failed to demonstrate that the ALJ's determination is unsupported by substantial evidence. Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

**III. The ALJ Did Not Violate the Treating Physician Rule**

Plaintiff asserts that the ALJ violated the treating physician rule by failing to afford Dr. Waitze's opinion controlling weight. (Pl. Br. 11.) The Court disagrees.

The medical opinions of treating physicians are generally given more weight than other evidence. The treating physician rule stipulates that "the opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is given 'controlling weight' as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2));

see also Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014)

("A treating physician's opinion need not be given controlling

weight where it is not well-supported or is not consistent with

the opinions of other medical experts" where those other

opinions amount to "substantial evidence to undermine the

opinion of the treating physician").

"The regulations further provide that even if controlling

weight is not given to the opinions of the treating physician,

the ALJ may still assign some weight to those views, and must

specifically explain the weight that is actually given to the

opinion." Schrack v. Astrue, 608 F. Supp. 2d 297, 301 (D. Conn.

2009) (citing Schupp v. Barnhart, No. Civ. 3:02-CV-103(WWE),

2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)).  It is "within

the province of the ALJ to credit portions of a treating

physician's report while declining to accept other portions of

the same report, where the record contain[s] conflicting

opinions on the same medical condition." Pavia v. Colvin, No.

6:14-cv-06379 (MAT), 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4,

2015) (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir.

2002)).

In determining the amount of weight to give to a medical

opinion, the ALJ considers the examining relationship, the

treatment relationship, the length of treatment, the nature and

extent of treatment, evidence in support of the medical opinion,

consistency with the record, specialty in the medical field, and any other relevant factors.  20 C.F.R. § 404.1527.  It is generally appropriate to "give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 416.927(c)(5).

After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'"  Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (citing Burgess, 537 F.3d at 129) (alteration in original).  The ALJ may not simply substitute his own judgment for that of the treating physician, and failure to provide good reasons for the weight given to a treating physician's opinion is grounds for remand.  Id.

"SSA regulations provide a very specific process for evaluating a treating physician's opinion" and failure to "*explicitly consider*" any of the named factors is grounds for rejecting the ALJ's decision.  Greek, 802 F.3d 370, 376 (2d Cir. 2015) (emphasis added).  However, an ALJ is not required to explicitly cite to the treating physician rule or its factors.  Crowell v. Comm'r of SSA, 705 Fed. Appx. 34, 35 (2d Cir. 2017).  It is sufficient that the ALJ substantively reference the rule and provide good reason for not assigning a plaintiff's treating physician controlling weight.  Id.

Dr. Waitze treated plaintiff during the relevant period and therefore is a treating physician entitled to controlling weight unless his opinion is not supported by controlling evidence. The ALJ referenced the treating physician rule in substance, rather than explicitly. (R. 18.) The ALJ noted the treating relationship, the length and nature of the relationship, and evidence both supporting and refuting Dr. Waitze's opinion. (R. 18.) However, the ALJ determined that Dr. Waitze's opinion is generally "overly restrictive" and not supported by substantial evidence in the record. (R. 18.) Therefore, the ALJ afforded Dr. Waitze's opinion partial weight. (R. 18.)

Dr. Waitze opined that plaintiff could frequently lift up to ten pounds, but never more than eleven to twenty pounds; could sit for up to thirty minutes, and stand or walk for up to fifteen minutes; occasionally reach with her left and right arms; and never push, pull, operate foot pedals, bend, stoop, climb ladders or scaffolds, kneel, crouch, or crawl. (R. 463– 66.)

However, the ALJ noted that plaintiff only personally saw Dr. Waitze a handful of times and plaintiff's medical records did not support such extreme limitations. (R. 18.) The record establishes that plaintiff can stand erect, has good strength, ambulates with a steady gait, can stand on her heals and toes, and perform a tandem gait, despite plaintiff's positive straight

leg raises and tenderness to the lumbar paraspinal muscle. (R. 18, 457, 459.) While plaintiff asserts that this evidence is irrelevant to whether she is in pain, that is not the issue before the Court. The issue is whether this evidence undermines the limitations imposed by Dr. Waitze. See Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014).

The ALJ noted that Dr. Waitze's assessment that plaintiff could never use foot pedals was contradicted by her testimony that she can drive. (R. 18, 47.) Plaintiff asserts that Dr. Waitze's testimony is not inconsistent because the use of the word "never" really meant any use under 1/3 of the time. (Pl. Br. 16.) Plaintiff is incorrect. The "occasionally" option states, "*up to* 1/3" and therefore includes all ability to operate foot controls below 1/3 of the time but greater than never. (R. 465)(emphasis added). This is even more evident as the word "frequently" encompasses 1/3 to 2/3 of the time. Plaintiff's reading of the selections would render the "occasionally" selection meaningless. The Court therefore rejects plaintiff's assertion.

Also contrary to Dr. Waitze's opinion, state agency physicians, Doctors Fong-Brenton and Rittner, opined that plaintiff could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; sit, stand, or walk for a total of six hours in an eight hour work day; had unlimited

ability to push or pull by operation of her hands or feet; could occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl; and could never climb ladders, ropes, or scaffolds. (R. 91-92, 104-05.)

Plaintiff has not shown that the relevant evidence precludes a reasonable mind from finding that Dr. Waitze's opinion is inconsistent with the record and overly restrictive. Plaintiff has thus failed to demonstrate that the ALJ's determination is unsupported by substantial evidence. <u>Williams on Behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988). The ALJ's determination that Dr. Waitze's opinion is not supported by substantial evidence is therefore supported by substantial evidence. The ALJ therefore did not violate the treating physician rule by affording Dr. Waitze's opinion less than controlling weight. <u>Mariani</u>, 567 F. App'x at 10.

## IV. The ALJ Did Not Fail to Develop the Record

Plaintiff asserts that the ALJ failed to develop the record by not requesting medical source statements from Doctors Quinn and Darling. (Pl. Br. 19.) The Court disagrees.

An ALJ has the affirmative duty to develop the record "in light of 'the essentially non-adversarial nature of a benefits proceeding.'" <u>Pratts v. Chater</u>, 94 F.3d 34, 37 (2d Cir. 1996) (quoting <u>Echevarria v. Secretary of HHS</u>, 685 F.2d 751, 755 (2d Cir. 1982)); <u>see also</u> <u>Swiantek v. Commissioner</u>, 588 F. App'x 82,

83-84 (2d Cir. 2015).  "When an unsuccessful claimant files a
civil action on the ground of inadequate development of the
record, the issue is whether the missing evidence is
significant."  Santiago v. Astrue, No. 3:10-cv-937(CFD), 2011 WL
4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts v.
Chater, 94 F.3d 34, 37–38 (2d Cir. 1996)).

    The regulations make clear that while the ALJ "will
ordinarily request a medical opinion as part of the consultative
examination process, the absence of a medical opinion in a
consultative examination report will not make the report
incomplete."  20 C.F.R. § 404.1519n.  A court must remand,
however, "where 'the medical records obtained by the ALJ do not
shed any light on the [claimant's RFC], and [where] the
consulting doctors did not personally evaluate' the claimant."
Martinez v. Berryhill, No. 3:17-cv-843 (SRU), 2019 WL 1199393,
at *11 (D. Conn. Mar. 14, 2019) (quoting Guillen v. Berryhill,
697 F. App'x 107, 108-09 (2d Cir. 2017) (summary order)).

    "The record is insufficient when '[t]he medical records
discuss [the claimant's] illnesses and suggest treatment for
them, but offer no insight into how [the] impairments affect or
do not affect [the claimant's] ability to work, or [his] ability
to undertake the activities of daily life.'"  Martinez, 2019 WL
1199393, at *11 (alterations in original) (quoting Guillen, 697
F. App'x at 109).

25

Plaintiff asserts that an obvious gap in the record was created by the absence of opinions from Doctors Quinn and Darling. (Pl. Br. 19.) Plaintiff further asserts that the longevity of her treating relationships with Doctors Quinn and Darling should have indicated to the ALJ that there was an obvious gap in the record without opinions from them. (Pl. Br. 19.) Plaintiff is incorrect.

An obvious gap in the record is created when the medical records fail to offer insight into how plaintiff's impairments affect her ability to work and her daily activities. Martinez, 2019 WL 1199393, at *11. The record is not deficient when "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity." Tankisi v. Comm'r of Soc. Sec., 521 Fed. Appx. 29, 34, (2d Cir. 2013). In this instance, the record was not deficient because it contained sufficient evidence to assess plaintiff's RFC.

First, absent any evidence or assertion by plaintiff to the contrary, the record contains all of plaintiff's medical records during the relevant period from all of her treating physicians. Second, plaintiff's treating physician Dr. Waitze provided a medical opinion assessing plaintiff's limitations. Dr. Waitze based his opinion on his personal medical notes and those of Dr. Quinn and Dr. Darling. See (R. 36.) Finally, state agency physicians, Doctors Fong-Brenton and Rittner, offered opinions

as to plaintiff's limitations based on their review of plaintiff's medical records.

Therefore, the record did more than discuss plaintiff's illnesses and suggest treatment for them. Rather, the record provided insight into how plaintiff's impairments affected or did not affect her ability to work and ability to undertake the activities of daily life. The ALJ thus had sufficient evidence to assess plaintiff's RFC. Therefore, there was not an obvious gap in the record and the ALJ did not fail to develop the record by not obtaining opinion evidence form Doctors Quinn and Darling. See Tankisi, 521 Fed. Appx. at 34.

### CONCLUSION

Based on the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #10-2) is DENIED and the Commissioner's motion to affirm that decision (Dkt. #11-1) is GRANTED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 5th day of February, 2020, at Hartford, Connecticut.

_____/s/_____
Robert A. Richardson
United States Magistrate Judge
